BANCO DE SEGUROS DEL
ESTADO, Petitioner,

v.

MUTUAL MARINE OFFICES,
INC., Respondent.

No. 02 Civ. 467(SAS).

United States District Court,
S.D. New York.

Sept. 5, 2002.

Jorge W. Moreira, The Moreira Law Firm, P.C., New York, NY, for Petitioner.

Daniel Hargraves, Andrew Costigan, Hargraves McConnell & Costigan, P.C., New York, NY, for Respondent.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

On August 6, 2002, this Court issued an opinion and order confirming two interim arbitral orders requiring Petitioner to post prejudgment security. *See Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 230 F.Supp.2d 362 (S.D.N.Y. 2002) (*"Banco I"*). Familiarity with that opinion is assumed. On August 22, 2002, Banco de Seguros del Estado ("Banco") moved for reconsideration. The motion to reconsider is granted, but the result remains unchanged.

## II. LEGAL STANDARD

A motion for reconsideration is governed by Local Rule 6.3 and is appropriate where a court overlooks "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 392 (S.D.N.Y.2000) (quotation marks and citation omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). Alternatively, a motion for reconsideration may be granted to "correct a clear error or prevent manifest injustice." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999). Local Rule 6.3 should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098, 2001 WL 286771, at *1 (S.D.N.Y. Mar.22, 2001); *see also In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (a Local Rule 6.3 motion "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"); *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y. 1988) (purpose of Local Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters").

## III. DISCUSSION

Banco raises four challenges to the August 6 Order: (1) the Court should have employed a de novo standard in reviewing the arbitral orders for manifest error of law; (2) contrary to the Court's August 6 Opinion, Banco did assert that the arbitration Panel's award was against public policy; (3) the Court erred in finding that the Panel did not act in manifest disregard of law; and (4) the Panel erroneously relied on the terms of the reinsurance agreement in finding that Banco was required to post prejudgment security. I will briefly address each of these arguments.

### A. The Standard of Review

 "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (quotation marks omitted). "Review for manifest error is 'severely limited'." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000) (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997)). The Second Circuit has cautioned that "manifest disregard clearly means more than error or misunderstanding with respect to the law." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998) (quotation marks omitted). Specifically, a court may not vacate an arbitration award unless it finds that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Greenberg*, 220 F.3d at 28 (citing *DiRussa*, 121 F.3d at 821).

 The party seeking vacatur of an arbitration award bears the burden of proving manifest disregard of law. *See*

*Greenberg*, 220 F.3d at 28 (citing *Willemijn Houdstermaatschappij*, 103 F.3d at 12). But, even if that party proves that the arbitrators' decision is based on a manifest error of law, a court must nevertheless confirm the award if grounds for the decision can be inferred from the facts of the case. *See Willemijn Houdstermaatschappij*, 103 F.3d at 13; *Green v. Progressive Mgmt., Inc.*, No. 00 Civ. 2539, 2000 WL 1229755, at *2 (S.D.N.Y. Aug. 29, 2000).

In response to this authority, which was summarized in a condensed format in the August 6 Opinion, Banco notes that in *Greenberg*, the Second Circuit held that "a district court's application of the manifest disregard standard is a legal determination that we review *de novo.*" *See* Banco's Memorandum of Law in Support of Petitioner's Motion for Reconsideration ("Banco Mem.") at 5 (quoting *Greenberg*, 220 F.3d at 28). This argument is frivolous. While the Second Circuit must review the district court's determination *de novo*, this in no way abrogates the extensive authority cited above regarding this Court's "severely limited" review of the arbitral award. This ground for reconsideration is rejected as the Court applied the appropriate standard of review.

### B. The Public Policy Argument

In the August 6 Opinion, the Court listed the seven grounds set forth in the Inter–American Convention that would permit a court to refuse to recognize or enforce an arbitral award. The Court then noted that "Banco does not claim that any of these provisions apply." *Banco I*, 2002 WL 1808201, at *6. Banco correctly points out that it did, in fact, claim one of those grounds— namely that "the recognition or execution of the decision would be contrary to the public policy ('order public') of th[e] State [of the tribunal]." 9

U.S.C. § 207. At page 3 of its Memorandum of Law in Reply on Plaintiff's Motion and in Opposition to Defendant's Cross–Motion ("Reply Brief"), Banco did, in fact, make the following argument: "[T]he interim award may be refused enforcement pursuant to Article 5 of the Inter–American Convention because they are contrary to the public policy of the United States, specifically the foreign policy interests embodied and reflected in the FSIA [Foreign Sovereign Immunities Act]".[1] Because the Court overlooked an argument raised on the initial motion, it must now consider the argument it failed to consider earlier. It is for this reason that the motion for reconsideration is granted.

■■■ A district court can only vacate an arbitration award on the basis of public policy if there is (1) a violation of " 'some explicit public policy'," and (2) "the award explicitly conflicts with 'law and legal precedents', as opposed to 'general considerations of supposed public interests'." *Alberti v. Morgan Stanley Dean Witter Reynolds Inc.*, No. 97 Civ. 9385, 1998 WL 438667, at *6 (S.D.N.Y. July 31, 1998), *aff'd*, 205 F.3d 1321, 2000 WL 19090 (2d Cir.2000) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Banco has correctly identified an "explicit public policy". Section 1609 of the FSIA explicitly states that "a foreign state shall be immune from attachment arrest and execution ..." 28 U.S.C. § 1609. The Second Circuit has held that this section requires that a foreign state or its instrumentality is generally immune from prejudgment attachment of its assets in the United States, unless that state explicitly waives its immunity. *See S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 413 (2d Cir.1983). Relying on *Stephens*, Banco argues that the Panel's interim awards are contrary to this public policy.

Banco's public policy argument fails for the same reason that this Court found that the Panel had not acted in "manifest disregard" of the law. *See Banco I*, 2002 WL 1808201, at *7–*9. While the Second Circuit has not addressed the issue, several courts have held that the holding in *Stephens* does not apply to arbitrations. *See International Ins. Co. v. Caja Nacional de Ahorro Y Seguro*, No. 00 Civ. 6703, 2001 WL 322005, at *3 (N.D.Ill. Apr.2, 2001), *aff'd*, 293 F.3d 392 (7th Cir.2002); *Skandia Am. Reinsurance Corp. v. Caja Nacional De Ahorro Y Seguro*, No. 96 Civ. 2301, 1997 WL 278054, at *1–*2 (S.D.N.Y. May 23, 1997). Moreover, in *Home Ins. Co. v. Banco de Seguros del Estado* ("Home"), No. 98 Civ. 6022, 1999 U.S. Dist. LEXIS 22478 (S.D.N.Y. Feb. 28, 1999), a court in this district held that the party claiming the benefit of the FSIA, there, as here, Banco de Seguros del Estado, waived its immunity by agreeing to arbitration. This is the short answer to the public policy

---

1. Banco expounds on this argument at some length at page 16 of its Reply Brief. I quote this section in full:

"The FSIA embodies a strong public policy concern of the United States and more specifically a foreign policy concern. As stated in *Stephens [v. Nat'l Distillers and Chemical Corp.*, 69 F.3d 1226, 1232–33 (2d Cir.1995)] (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)):

The FSIA reflects an equally important national concern [as compared to civil rights]—foreign policy. As the Supreme Court has noted: By reason of its authority over foreign commerce and foreign relations, Congress has the undisputed power to decide, as a matter of federal law, whether and under what circumstances foreign nations should be amenable to suit in the United States. Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States."

argument. Accordingly, Banco has failed to show how enforcing the arbitral awards here "explicitly conflicts" with this public policy. Thus, reconsideration on this ground must be denied.

## C. Manifest Disregard of the Law

In this section of its motion, Banco cites no controlling authority overlooked by the Court, nor does it cite to any factual matters that were before the Court but that the Court failed to consider. Instead, it reargues the points it made during the initial briefing and now explains to the Court how its analysis is "erroneous". This is the type of argument that must be made to an appellate court and is not appropriate argument in a motion for reconsideration.

Nonetheless, I will briefly address the argument. Banco claims that this Court "erred in attempting to create a 'basis' for the Panel to rule in favor of the posting of security by asserting that the Panel relied upon these unpublished decisions [*Home, Caja*, 2001 WL 322005, at *3; and *Skandia*, 1997 WL 278054, at *1–*2] and therefore, since there was opposing case law, there could be no manifest disregard of the law." Banco Mem. at 9–10.

■ This Court did no such thing. As noted in *Banco I*, "[b]ecause the question before the Court is whether the arbitrators acted in 'manifest disregard of the law', ... 'the Court need not pronounce authoritatively upon'" the merits of Banco's claim, and is therefore not required to decide whether *Home, Caja* or *Skandia* were correctly decided. Rather, the question is "whether the Panel ignored or refused to apply 'well defined, explicit, and clearly applicable' law of which it was aware." *Banco I*, 2002 WL 1808201, at *8. The existence of these three opinions, all of which approved the award of prejudgment security against a foreign state or instrumentality in the context of an arbitration, merely show that the law in this are is not "well defined" and "explicit." Accordingly, reconsideration on this ground is denied.

## D. The Panel Relied on the Reinsurance Contracts

■ In its final argument, Banco argues that the Panel relied on the reinsurance contracts in dispute as permitting an award of prejudgment security. Banco notes that this Court, in contrast, has justified the award by relying on the trilogy of *Home, Caja* and *Skandia* to support an award of prejudgment security. Banco argues that the Court cannot substitute a ground for the award that was not specifically cited by the Panel, particularly if the Panel relied on a ground that did not and could not support its award. In effect, Banco is making the argument on reconsideration that it should be making on appeal, namely explaining to the district court how it erred. Nonetheless, I will briefly address this issue.

As noted in *Banco I*, even if a party proves that the arbitrator's decision was based on an improper interpretation of the law, a court must nevertheless confirm the award if grounds for the decision can be inferred from the facts of the case. *Banco I*, 2002 WL 1809202, at *7. Here, the Panel was provided with a number of cases from which it could have reasonably concluded that it was authorized to award prejudgment security. Thus, even if the reinsurance contracts do not authorize such an award, and even if this Court disagrees with the case law presented to the Panel, that case law provides a basis for confirming the interim Orders. Accordingly, reconsideration on this ground is denied.

## V. CONCLUSION

For the reasons stated above, Banco's motion for reconsideration is denied in its

entirety. The Clerk of the Court is ordered to close this case.